United States Court of Appeals
For the Eighth Circuit
_____

No. 23-1069
_____

Simon Gavino Quito-Guachichulca

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

------------------------------

National Immigration Project of the National Lawyers Guild

*Amicus on Behalf of Petitioner*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: February 15, 2024
Filed: December 9, 2024
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

The question in this case is whether Minnesota's crime of third-degree criminal sexual conduct falls within the federal definition of "rape." The answer is no, so we grant Simon Quito-Guachichulca's petition for review.

I.

Sixteen years after being admitted as a lawful permanent resident, Quito pleaded guilty to third-degree criminal sexual conduct, *see* Minn. Stat. § 609.344, subd. 1(d) (2013); *see also State v. Hart*, 477 N.W.2d 732, 737 (Minn. Ct. App. 1991) (explaining that it is a lesser-included offense of more serious sex crimes). Removal proceedings followed, based on the government's view that the crime was an "aggravated felony" that made him deportable. 8 U.S.C. § 1227(a)(2)(A)(iii).

The question has always been *which*. *See id.* § 1101(a)(43) (listing numerous possibilities). At first, the government claimed it was "a crime of violence." *Id.* § 1101(a)(43)(F). But while Quito's petition for review was pending, the Supreme Court concluded that the designation "was impermissibly vague." *Sessions v. Dimaya*, 584 U.S. 148, 152 (2018); *see* 8 U.S.C. § 1101(a)(43)(F) (incorporating 18 U.S.C. § 16). Not long after, we vacated the removal order to the extent it relied on the crime-of-violence classification and remanded to the Board of Immigration Appeals for reconsideration. *See Quito-Guachichulca v. Sessions*, No. 16-1431 (8th Cir. July 27, 2018).

On remand, the government switched to the theory that Quito's crime qualified as "rape," another type of "aggravated felony." 8 U.S.C. § 1101(a)(43)(A). An immigration judge and the Board of Immigration Appeals agreed, and now it is our turn to consider the issue.

II.

Before we do, however, we must answer a preliminary question. Quito argues that allowing the government to change theories violates res judicata, which "bars claims that were or *could have been* litigated in [an] earlier proceeding." *Wedow v. City of Kansas City*, 442 F.3d 661, 669 (8th Cir. 2006) (emphasis added). It is unclear whether the doctrine applies in immigration proceedings. *See Cardona v. Holder*, 754 F.3d 528, 529 (8th Cir. 2014). But even if it does, it would pose no obstacle here, because one of the requirements is "a final judgment on the merits." *Id.* at 530 (citation omitted).

On that score, Quito can point us only to the first Board order, which dealt with the government's crime-of-violence argument but never considered rape as a possibility. Even though the Board's silence was a result of the government's failure to raise it, the order lost whatever finality it had once we vacated and remanded. *See Figg v. Russell*, 433 F.3d 593, 600 (8th Cir. 2006) (holding that neither a vacated decision nor the "vacatur" itself was "a final and valid determination" (emphasis omitted)); *see also* 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4432 (3d ed. 2024) ("There is no preclusion as to [any] matters vacated or reversed . . . ."). No finality, no res judicata. *See Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 978 (8th Cir. 2001) (per curiam).

III.

With nothing stopping the government from changing its theory, we must decide whether Quito's conviction of third-degree criminal sexual conduct counts as "rape." 8 U.S.C. § 1101(a)(43)(A). Enter the "categorical approach," *United States v. Lung'aho*, 72 F.4th 845, 848 (8th Cir. 2023) (quoting *Mathis v. United States*, 579 U.S. 500, 504 (2016)), which requires us to examine "the nature of the[] conviction[]," not Quito's "actual conduct," *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389 (2017). *See* 8 U.S.C. § 1227(a)(2)(A)(i)–(v) (basing removability on being

-3-

"convicted of" certain crimes, not on actual conduct); *United States v. Carrillo Topete*, 116 F.4th 792, 794 (8th Cir. 2024) (explaining that "[w]hen the conviction is what counts, we apply the categorical approach and examine the full range of conduct encompassed" (citation omitted)).

As applied here, the question is whether everything that could have led to a conviction, including "the least of the acts criminalized," qualifies as rape. *Esquivel-Quintana*, 581 U.S. at 390. Answering it requires the use of "traditional tools of statutory construction" to "determine the best reading of [each] statute." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024); *see Esquivel-Quintana*, 581 U.S. at 391 (explaining that we interpret undefined terms in the list of aggravated felonies "using the normal tools of statutory interpretation"). Our review is de novo, *see Huynh v. Garland*, 102 F.4th 943, 944 (8th Cir. 2024), and we no longer treat the government's views as controlling or even "especially informative." *Loper Bright*, 144 S. Ct. at 2267. Deference to the Board, in other words, is now a relic of the past.[1]

### A.

Everyone agrees on the elements of third-degree criminal sexual conduct. The prohibited act is "engag[ing] in sexual penetration." Minn. Stat. § 609.344, subd. 1 (2013). The mental state is "know[ledge] or . . . reason to know that the complainant is mentally impaired, mentally incapacitated, or physically helpless." *Id.* subd. 1(d).

---

[1] The "deference" we used to "generally accord . . . to the [Board's] interpretation" of deportation-authorizing statutes, *Bakor v. Barr*, 958 F.3d 732, 735 (8th Cir. 2020), did not survive *Loper Bright*. *See* 144 S. Ct. at 2273 ("*Chevron* is overruled."); *see also T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006) ("[A] panel may depart from circuit precedent based on an intervening opinion of the Supreme Court that undermines the prior precedent.").

The statute lists several ways to "engage in sexual penetration." *Id.* subd. 1. Some are obvious, like "sexual intercourse, cunnilingus, fellatio, or anal intercourse." *Id.* § 609.341, subd. 12(1). Others less so, like "an[] intrusion however slight into the genital or anal openings . . . of the complainant's body by *any part* of the actor's body or *any object* used by the actor for this purpose." *Id.* subd. 12(2)(i) (emphasis added). Among "the least of the acts criminalized," *Esquivel-Quintana*, 581 U.S. at 390, in other words, is penetration with a finger or object.

B.

The definition of "rape" under federal immigration law is narrower. The word appears in a long list of "aggravated felon[ies]," without a definition provided or a cross-reference to a corresponding federal offense. 8 U.S.C. § 1101(a)(43)(A). In the absence of either, our task is to determine whether digital or mechanical penetration falls within the "generic" definition of rape. *Moncrieffe v. Holder*, 569 U.S. 184, 196 (2013) ("[T]he state offense of conviction [must] meet the 'elements' of the generic federal offense defined by the INA . . . ."). As counterintuitive as it may seem, when "rape" was added to the list in 1996, the answer was no. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C, § 321(a)(1), 110 Stat. 3009-546, 3009-627; *see also Loper Bright*, 144 S. Ct. at 2266 ("[E]very statute's meaning is fixed at the time of enactment." (citation omitted)).

1.

At the time, the ordinary meaning of "rape" was "illicit sexual intercourse without the consent of the woman and effected by force, duress, intimidation, or deception as to the nature of the act." *Webster's Third New International Dictionary* 1882 (1993). Largely unchanged from the traditional common-law formulation of "unlawful carnal knowledge of a woman by a man forcibly and against her will," *Black's Law Dictionary* 1260 (6th ed. 1990), it still required "penetration of the

Appellate Case: 23-1069    Page: 5    Date Filed: 12/09/2024 Entry ID: 5464042

vagina by the penis," or at least "genital contact *between* individuals," *Webster's Third*, *supra*, at 2082 (emphasis added) (defining "sexual intercourse"); *see Black's Law Dictionary*, *supra*, at 213–14 (describing "carnal knowledge" as "the act of a man having sexual bodily connections with a woman"). Sources that the Supreme Court has deemed "reliable" for this purpose, *Esquivel-Quintana*, 581 U.S. at 392, held the same view. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 733 (2d ed. 1995) (stating that "rape" involves "[a] man . . . engag[ing] in intercourse (in the old statutes, carnal knowledge) with a woman" (quoting Susan Estrich, *Real Rape* 8 (1978))). And so did other definitions, although some contemplated anal and oral sex. *See, e.g.*, *The American Heritage Dictionary of the English Language* 1498 (3d ed. 1992) (referring to "sex acts, *especially* sexual intercourse" (emphasis added)); *id.* at 1654 (confirming that "sexual intercourse" requires "[c]oitus" or "[s]exual union . . . involving genital contact"); *Black's Law Dictionary*, *supra*, at 1260 (noting that "[u]nder some statutes, [the] crime embraces unnatural as well as natural sexual intercourse"). None, however, mentioned digital or mechanical penetration.

The same was true of "the generic sense in which the term [was then] . . . used in [states'] criminal codes." *Taylor v. United States*, 495 U.S. 575, 598 (1990). Of the 23 states that had an offense called "rape" in 1996, only a handful included digital or mechanical penetration. *See In re Keeley*, 27 I. & N. Dec. 146, 149 & nn.3–4 (BIA 2017) (listing statutes), *rev'd sub nom. Keeley v. Whitaker*, 910 F.3d 878 (6th Cir. 2018). Most stuck with the common-law definition or, like the Model Penal Code, extended it just to anal and oral sex. *See* Model Penal Code §§ 213.0(2), 213.1(1) (Am. L. Inst. 1962) (defining "rape" and "sexual intercourse"). As reflections of how the term "rape" was used and understood at the time, these provisions "provide[] strong evidence" of its "common, contemporary definition." *United States v. Schneider*, 905 F.3d 1088, 1093 (8th Cir. 2018).

Perhaps the strongest evidence, however, comes from the list of aggravated felonies itself. *Cf. Pugin v. Garland*, 599 U.S. 600, 604 (2023) (looking to other

-6-

"federal laws" to define a generic aggravated felony). When Congress added "rape," it became part of a trio: "murder, rape, [and] sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A); *see* 110 Stat. at 3009-627. The back-to-back references to "rape" and "sexual abuse" suggest the two terms are distinct, neither surplusage of the other. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170, 174 (2012) (describing "the presumption[s] . . . that [a] different term denotes a different idea" and that "every word . . . is to be given effect"); *City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021) (explaining that the "canon against surplusage . . . strong[ly]" disfavors "interpretation[s] [that] would render superfluous another part of the same statutory scheme" (citation omitted)). Indeed, these are just the sort of "heft[y] and distinctive[]" terms to which the different-words-different-meanings canon usually applies. *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (explaining that "drafters are likely to keep track of and standardize" them).

Sure enough, Congress had already been distinguishing between the two for some time, beginning at least a decade earlier when it replaced the federal crime of "rape" with multiple "sexual abuse" offenses. *See* Sexual Abuse Act of 1986, Pub. L. No. 99-646, § 87(b), 100 Stat. 3592, 3620–24. Doing so expanded the range of covered conduct from "carnal knowledge," *United States v. Smith*, 574 F.2d 988, 990 (9th Cir. 1978) (interpreting the old federal rape statute), to multiple forms of "sexual act[s]" and "sexual contact," 18 U.S.C. § 2246(2)–(3). Nothing suggests that anything changed over the next decade, when both terms once again appeared in the U.S. Code, this time with immigration-related consequences.[2] *See Perez-*

---

[2]The fact that a 1994 sentencing law used a cross-reference to *sexual-abuse* provisions to define the term "assault with intent to commit *rape*," 18 U.S.C. § 3559(c)(2)(A) (emphasis added), does not establish that Congress saw the two as interchangeable. If anything, it suggests that, when Congress wanted to give "rape" a broader meaning, it knew how to do it. *Cf.* 34 U.S.C. § 30309(9) (defining it, in 2003, as "carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling").

-7-

Appellate Case: 23-1069     Page: 7     Date Filed: 12/09/2024 Entry ID: 5464042

*Gonzalez v. Holder*, 667 F.3d 622, 627 (5th Cir. 2012) (recognizing that "Congress demonstrated its continued institutional knowledge of the difference between the terms" by using both).

To the contrary, when "a word" like rape is "transplanted from another legal source," it usually "brings the old soil with it." *Stokeling v. United States*, 586 U.S. 73, 80 (2019) (citation omitted). Why else pick a term with an established legal definition over other possible alternatives, including some that already had a broader fixed meaning? And why pair "rape" with "sexual abuse" unless the idea was to cover fewer crimes against adults than against minors? *See Keeley*, 910 F.3d at 884 ("Congress clearly intended to penalize a more expansive set of sex crimes committed against minors . . . ."). In short, as every other court faced with the issue has concluded, "the generic crime of rape in 1996 . . . did not include digital [or mechanical] penetration." *Id.* (citing *Perez-Gonzalez*, 667 F.3d at 627).

2.

The government seems to think that the recent name changes at the state level for these types of crimes help its case, not hurt it. *See* Garner, *supra*, at 733–34 (describing this development); *see also, e.g.*, Act of June 5, 1975, ch. 374, §§ 2–6, 13, 1975 Minn. Laws 1243, 1245–48, 1251 (replacing "rape" with "criminal sexual conduct"). In its view, all of these words and phrases—"rape," "sexual abuse," and "criminal sexual conduct"—are interchangeable, with each encompassing "object/digital penetration in their rape-analogous/rape statutes."

If the word "analogous" stands out, it should. Although it shows up throughout the government's brief, it never appears in the statute itself. Adding words to unambiguous text is rarely the answer. *See Dean v. United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words . . . into a statute that do not appear on its face." (citation omitted)). Even if, as the government argues, the statute *ought* to be broader.

-8-

The government's position raises other red flags. One is a lack of insight into why we "survey state statutes" in categorical-approach cases. *Schneider*, 905 F.3d at 1093. The idea is simple: how "[a] *term* [was] . . . used" can "offer[] useful context" in determining what it means. *Esquivel-Quintana*, 581 U.S. at 395, 396 n.3 (emphasis added). Most helpful is when the same term appears in other statutes. *See id.* at 396 (highlighting jurisdictions "that have offenses titled 'sexual abuse of a minor'"). Less helpful, but still informative, is when there are textual reasons to believe that a statute with a different label may reflect what Congress meant at the time. *See id.* at 391–92 (determining that the "ordinary meaning" of "sexual abuse of a minor" covers statutory rape, and *then* surveying state statutory-rape laws); *see also Pugin*, 599 U.S. at 606 (noting that state-law "terminology . . . is not dispositive"). Least helpful of all is the type of evidence the government relies on here: statutes defining broader or narrower crimes that are called something different.

For many states, the whole point of opting for labels like "sexual assault" or "criminal sexual conduct" was to expand the definition of the crime to bring more than just the "old soil" along. *Stokeling*, 586 U.S. at 80 (citation omitted); *see In re Keeley*, 27 I. & N. Dec. at 149–50 (discussing the terminological "evol[ution] during the rape[-]reform movement"). Congress bucked the trend by choosing "rape" over a broader alternative like "sexual abuse," its next-door neighbor in the list of aggravated felonies. 8 U.S.C. § 1101(a)(43)(A). It also declined to use an "expansive phrase" like "relat[ing] to" that would have extended the statute's reach. *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 95 (2017).

What the government is essentially asking us to do is agree that certain "analogous" state crimes *must* count as rape and then reverse engineer a definition to make sure they do. *See Keeley*, 910 F.3d at 883 (describing the government's "effort to shoehorn sexual[-]abuse conduct into the bounds of rape"). The problem is that we are reading a statute, not writing one. *See id.* at 884. Congress said "rape."

-9-

If it did not mean what it said, it could have passed a different statute. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 454 (2002).

Plus, if its choice of words left a gap in the statute, other provisions help fill it. Committing "crimes involving moral turpitude" makes an alien deportable, regardless of whether they are also aggravated felonies. 8 U.S.C. § 1227(a)(2)(A)(i)–(ii); *cf. Bakor*, 958 F.3d at 734–36. We cannot say whether Quito himself is deportable on this basis, mainly because the government has not raised the possibility. But as an option for deporting aliens convicted in states with laws that do not fit within the traditional definition of rape, it substantially weakens the argument that Congress unintentionally left a gaping hole in the statute. *See Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC*, 556 F.3d 690, 695 (8th Cir. 2009) (explaining that absurdity requires more than "anomalous" results or a "lack of complete logic").

Timing also does not favor the government's argument. Congress made "rape" an aggravated felony before it became obvious just how "topsy-turvy" the categorical approach could be. *Lung'aho*, 72 F.4th at 849; *see, e.g.*, *Shepard v. United States*, 544 U.S. 13, 17 (2005). It is unclear how "counterintuitive" results from later doctrinal developments, *Mathis*, 579 U.S. at 510, could lead to the conclusion that Congress did not mean what it said at the time. Besides, it could—and still can—fix any "unanticipated complications," *United States v. Yellow Cab Co.*, 340 U.S. 543, 556 (1951), by defining "rape" more broadly or adding other sex offenses to the list. *See Perez-Gonzalez*, 667 F.3d at 626 (listing a few of the "limitless possibilities"); *cf., e.g.*, 8 U.S.C. § 1101(a)(43)(A) (including "*sexual abuse* of a minor" (emphasis added)); *id.* (Q)–(T) (referring to "offense[s] *relating to*" various criminal acts (emphasis added)).

* * *

Unless and until it does, however, the aggravated-felony version of "rape" excludes digital or mechanical penetration. *See* 8 U.S.C. § 1101(a)(43)(A). Minnesota's version of third-degree criminal sexual conduct, by contrast, includes it. *See* Minn. Stat. §§ 609.341, subd. 12(2)(i), 609.344, subd. 1(d) (2013). The categorical mismatch between the two closes one more door to the government in this case. *See Esquivel-Quintana*, 581 U.S. at 389–90.

IV.

We accordingly grant the petition for review and vacate and remand for further proceedings.

_____